CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 24 2014

JULIA C. DUDLEY, CLERK
BY: Linda Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

AMINA AL-HABASHY, Plaintiff,

v.

COMMONWEALTH OF VIRGINIA DEPARTMENT OF JUVENILE JUSTICE, et al., Defendants.

Civil Action No. 7:13CV00459

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Chief United States District Judge

In this employment discrimination action, the Commonwealth of Virginia Department of Juvenile Justice ("DJJ"), Rodney Hubbard, and Kimberly Doyle (collectively referred to as the "DJJ defendants") have moved for partial dismissal of the second amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the following reasons, the motion will be granted in part and denied in part.

**Background**

Plaintiff Amina Al-Habashy is an African-American woman of the Muslim faith, who is over the age of 40. She was employed by the City of Roanoke from 1996 until September 2012.

At all times relevant to the instant action, Al-Habashy worked as a program coordinator for the City. In that position, Al-Habashy was responsible for "manag[ing] and coordinat[ing] a community service program for youth subject to the jurisdiction of the City of Roanoke Juvenile & Domestic Relations District Court and/or the 23A Court Service Unit" of the DJJ. 2d Am. Compl. ¶ 21, Docket No. 38.

[1] According to the DJJ Defendants' briefs, Hubbard passed away on January 30, 2014. As of this date, no formal statement of death has been filed. See Fed. R. Civ. P. 25(a)(1).

Although Al-Habashy's salary was paid by the City, she contends that the DJJ exercised sufficient control over her to be considered her "joint employer." Id. ¶ 82. Employees of the DJJ directly supervised her work, evaluated her job performance, and had the authority to discipline her for misconduct. Two of Al-Habashy's DJJ supervisors were defendants Rodney Hubbard and Kimberly Doyle.

In 2009, Al-Habashy applied for a probation supervisor position within the DJJ's 23rd Court Service Unit. Al-Habashy interviewed for the position, but she did not advance beyond the initial interview. Al-Habashy "complained that her failure to progress beyond the initial interview stage was due to discrimination based upon her age, race[,] and religion." Id. ¶ 38. "Her complaints consisted of internal complaints to DJJ, . . . a Charge of Discrimination [filed] with the Equal Employment Opportunity Commission ("EEOC") in the summer of 2009 and, ultimately, [a complaint filed] in the United States District Court for the Western District of Virginia at Roanoke." Id. ¶ 39. The federal action remained pending from June 29, 2011 until February 28, 2012, when the DJJ was awarded summary judgment. See Al-Habashy v. Dep't of Juvenile Justice, No. 7:11CV00306, 2012 U.S. Dist. LEXIS 24869 (W.D. Va. Feb. 28, 2012) (Wilson, J.).

Al-Habashy claims that DJJ officials, including Hubbard, subsequently took adverse employment actions against her in retaliation for her complaints of discrimination. "Plaintiff timely filed a Charge of Discrimination with the EEOC about this retaliation." 2d Am. Compl. ¶ 45. She then filed a second action in this court, asserting a claim for retaliation against the DJJ.

The second action was voluntarily dismissed without prejudice on December 20, 2012.[2] See Al-Habashy v. Dep't of Juvenile Justice, No. 7:12CV00100 (W.D. Va. Dec. 20, 2012) (Wilson, J.).

In late 2011, Al-Habashy applied for another probation supervisor position, which became vacant when one of her supervisors retired from the DJJ. Al-Habashy interviewed for the supervisory position in November 2011. Hubbard served on the interview panel and selected the other panel members. None of the panel members were Muslim.

Al-Habashy alleges that the panel members became aware of her religious beliefs during the interview. She was dressed in traditional Muslim clothing, which left only her face and hands uncovered. Additionally, Al-Habashy declined to shake hands with a male panel member for religious reasons.

Al-Habashy did not proceed in the selection process beyond the initial interview. She alleges that she was the only applicant for the position with supervisory experience in a juvenile court setting, and that Kimberly Doyle, who was ultimately selected, "is a Caucasian female more than 12 years younger than Plaintiff, who does not practice the Muslim religion, who has fewer years of relevant service than Plaintiff and who, unlike Plaintiff, never previously held a position where she exercised supervision over others." 2d Am. Compl. ¶ 59.

Al-Habashy then filed another charge of discrimination with the EEOC "alleging discrimination on account of age, race, and religion as a result of not being hired for the supervisor position." Id. ¶ 63. She received a right to sue letter from the EEOC for that charge.

[2] According to an agreement signed by counsel for the plaintiff and the DJJ on April 3, 2013, the second action was voluntarily dismissed in order for additional allegations of discrimination to proceed through the EEOC's administrative process. Those allegations were asserted in Charge No. 438-2012-00489. After the plaintiff received her right to sue letter for Charge No. 438-2012-00489, the DJJ agreed to permit Al-Habashy to delay filing suit on matters raised in the charge until an additional, final charge of discrimination against the DJJ was adjudicated by the EEOC. See Ex. 5 to Pl.'s Br. in Opp'n to DJJ Defs.' Mot. to Dismiss, Docket No. 32-5.

Defendant Doyle became Al-Habashy's supervisor. Al-Habashy alleges that Doyle "immediately . . . began to harass, retaliate[,] and discriminate against [her] by, among other behaviors, refusing training opportunities[,] hindering Plaintiff from obtaining reimbursement for expenses incurred in her employment, being overly and disparately critical of her job performance, disciplining her for actions that other similarly situated persons who were not Muslim and/or black were not disciplined, refusing to personally interact with Plaintiff, and ignoring Plaintiff in public areas of the office." Id. ¶ 67.

Al-Habashy sought medical treatment to assist her in dealing with "stress" and "emotional distress." Id. ¶ 70. "Plaintiff's medical providers opined that Plaintiff's stress, emotional distress[,] and physical condition constituted a serious medical condition, and recommended that she take time off from work . . . ." Id. ¶ 71.

In July 2012, Al-Habashy notified the City of Roanoke's Human Resources Department that she needed to take time off from work. Al-Habashy claims that although the City customarily permitted employees to take time off regardless of whether they had leave available, "Roanoke did not afford Plaintiff this custom and practice but instead . . . terminated her employment." Id. ¶ 74. Al-Habashy alleges that the DJJ, Hubbard, Doyle, and defendant James O'Hare "participated in the decision to terminate [her], and encouraged the City to terminate her." Id. ¶ 78.

Al-Habashy filed additional charges of discrimination against the City of Roanoke and the DJJ. In those charges, she "alleged discrimination on account of race, religion, disability[,] and age," as well as "retaliation for complaining about discrimination." Id. ¶ 81. On September 27, 2013, after receiving right to sue letters for both charges, Al-Habashy filed the instant action against the DJJ, the City of Roanoke, Hubbard, Doyle, and O'Hare, a City employee.

On March 12, 2014, Al-Habashy was granted leave to file an amended complaint. All five defendants then moved to dismiss portions of the amended complaint. The court held a hearing on the motions on May 19, 2014. Following the hearing, the court entered an order permitting Al-Habashy to file a second amended complaint.

Al-Habashy filed a second amended complaint on June 16, 2014, in which she asserts the following claims: retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against the DJJ and the City of Roanoke (Count I); discrimination on account of race and religion in violation of Title VII against the DJJ (Count II); discrimination on account of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") against the DJJ (Count III); harassment on account of race and religion in violation of Title VII against the DJJ and the City of Roanoke (Count IV); discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") against the City of Roanoke (Count V); violations of her First Amendment right to free speech and her Fourteenth Amendment right to due process pursuant to 42 U.S.C. § 1983 against Hubbard, Doyle, and O'Hare (Count VI); race discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against the DJJ, the City of Roanoke, Hubbard, Doyle, and O'Hare (Count VII); violations of the Fair Labor Standards Act of 1938 ("FLSA") against the City of Roanoke (Count VIII); and intentional interference with employment against the DJJ, Hubbard, and Doyle (Count IX).

The DJJ, Hubbard, and Doyle have moved for partial dismissal of the second amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed and is ripe for review.

## Standards of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Dismissal for lack of subject matter jurisdiction is appropriate "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal citation and quotation marks omitted). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In deciding a Rule 12(b)(6) motion to dismiss,

the court may consider "the complaint, exhibits attached to the complaint, matters of public record, and judicially noted facts." Bartlett v. Frederick Cnty., 246 F. App'x 201, 205 (4th Cir. 2007).

## Discussion

### I. Motion to Dismiss under Rule 12(b)(1)

Before a plaintiff may file suit under Title VII, she is required to file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(f)(1). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Group, Ltd., 551 F.3d 297, 301 (4th Cir. 2009).

In this case, Al-Habashy claims that the allegations in her second amended complaint were raised in four charges of discrimination that she filed with the EEOC, and that she received right to sue letters for the charges. See 2d Am. Compl. ¶ 5. In the third charge of discrimination (Charge No. 438-2013-00687), signed on June 3, 2013, Al-Habashy alleged that the DJJ discriminated against her on the basis of race and religion, in violation of Title VII. She also alleged that the DJJ retaliated against her for engaging in protected activity, in violation of Title VII. The charge identified the DJJ as the agency responsible for discriminating and retaliating against her, and listed the address for the DJJ's 23-A Court Service Unit in Roanoke, Virginia. See Ex. 3 to Pl.'s Br. in Opp'n to DJJ Defs.' Mot. to Dismiss, Docket No. 32-3.

The DJJ now seeks dismissal of the Title VII claims that were raised in Charge No. 438-2013-00687. The DJJ argues that it never received a copy of this particular charge and, thus, that the plaintiff failed to properly exhaust her administrative remedies. The DJJ emphasizes that the EEOC's Notice of Charge of Discrimination for Charge No. 438-2013-00687 was addressed to Carolyn Glover, who is not an employee of the DJJ, but instead serves as the Human Resources

Director for the City of Roanoke.[3] See Ex. 4 to Pl.'s Br. in Opp'n to DJJ Defs.' Mot. to Dismiss, Docket No. 32-4.

Having considered the parties' arguments, the court concludes that the Rule 12(b)(1) motion to dismiss must be denied. While it is well settled that a Title VII plaintiff must exhaust her administrative remedies before filing suit in federal court, it is also well established that such plaintiff is "not charged with the [EEOC's] failure to perform its statutory duties." Russell v. American Tobacco Co., 528 F.2d 357, 365 (4th Cir. 1975); see also B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1102 (9th Cir. 2002) (emphasizing that "[a]ny other rule would be inconsistent with the remedial purposes of the statute[s]"). Under the relevant statute, the EEOC is responsible for serving notice of a charge of discrimination on an employer. See 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, . . . alleging that an employer . . . has engaged in an unlawful employment practice, the [EEOC] shall serve a notice of the charge . . . on such employer . . . ."). Consequently, the EEOC's failure to fulfill this statutory duty does not bar a plaintiff from seeking judicial relief. Evans v. MAAX-KSD Corp., No. 06-2804, 2006 U.S. Dist. LEXIS 87142, at *8-9 (E.D. Pa. Nov. 30, 2006); see also Williams v. Ocean Beach Club, LLC, No. 2:09cv461, 2011 U.S. Dist. LEXIS 55276, at *20 (E.D. Va. Apr. 29, 2011) (holding that the plaintiff exhausted her administrative remedies when she filed a charge with the EEOC, "regardless of the EEOC's apparent failure to provide Defendants notice of it").

In this case, Charge No. 438-2013-00687, which was signed by Al-Habashy, identified the DJJ as the agency responsible for engaging in discrimination and retaliation, and listed the address

3 The court notes that this error likely resulted from the fact that Al-Habashy filed a separate charge of discrimination against the City of Roanoke on the same day that she filed Charge No. 438-2013-00687 against the DJJ.

for the DJJ's 23-A Court Service Unit. The charge made no reference to Carolyn Glover or any other employee of the City of Roanoke, and Al-Habashy had no role in preparing the notice that contained incorrect information in this regard. Because Al-Habashy plainly identified the DJJ in Charge No. 438-2013-00687, and received a right to sue letter from the EEOC with respect to that complaint, the court concludes that she adequately exhausted her administrative remedies. Accordingly, the partial motion to dismiss for lack of subject matter jurisdiction will be denied.

## II. Motion to Dismiss under Rule 12(b)(6)

The DJJ defendants have also moved to dismiss certain claims under Rule 12(b)(6). Specifically, they seek dismissal of Al-Habashy's claim for religious discrimination in violation of Title VII; her claim for age discrimination in violation of the ADEA; her claim for harassment on the basis of religion in violation of Title VII; her constitutional claims under 42 U.S.C. § 1983; and her claim for race discrimination in violation of 42 U.S.C. §§ 1981 and 1983. The court will address each of these claims in turn.

### A. Religious Discrimination

In Count II of the second amended complaint, Al-Habashy claims that the DJJ discriminated against her on the basis of her religion, in violation of Title VII. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from discriminating "against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"). In moving to dismiss this portion of Count II under Rule 12(b)(6), the DJJ argues that the plaintiff "fails to allege the specific conduct which was discriminatory against her based on her religion," or "when the conduct occurred." DJJ's Br. in Supp. of Partial Mot. to Dismiss 9, Docket No. 41. For the following reasons, however, the court is unable to agree.

In Count II, Al-Habashy specifically claims that the DJJ discriminated against her on the basis of her religion when it failed to select her for the supervisory position that she applied for in 2011. Al-Habashy alleges that that she was qualified for the position, and that she was interviewed by a panel of DJJ employees in November of 2011. According to Al-Habashy, none of the panel members were Muslim. She alleges that the panel members became aware of her religious beliefs when she arrived for the interview, because she was dressed in traditional Muslim attire and declined to shake hands with a male panel member for religion reasons. Al-Habashy alleges that she was the only applicant for the position with supervisory experience in a juvenile court setting, and that the DJJ nonetheless selected a less qualified, non-Muslim applicant. She further alleges that the DJJ has never hired a person of the Muslim religion as a supervisor in the 23rd Court Service Unit.

Assuming the truth of Al-Habashy's allegations, the court concludes that her claim of religious discrimination is sufficient to withstand the DJJ's motion to dismiss. See Bala v. Virginia Dep't of Conservation & Recreation, 532 F. App'x 332, 334-35 (4th Cir. 2013) (emphasizing that "a plaintiff need not establish a prima facie case [of discrimination] in order to survive a motion to dismiss," and holding that the plaintiff's claim of race and national origin discrimination was sufficiently pled where the plaintiff "alleged that less qualified applicants were selected for [an] interview and that the screening panel for the position consisted of only one Caucasian male"). Accordingly, the Rule 12(b)(6) motion will be denied with respect to this claim.

**B. Age Discrimination**

In Count III, Al-Habashy claims that the DJJ discriminated against her on account of age, in violation of the ADEA. See 29 U.S.C. § 623(a)(1) (making it "unlawful for an employer . . . to

discharge or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age"). For the following reasons, the court concludes that this claim is barred by the Eleventh Amendment to the United States Constitution.

Pursuant to the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens." Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). This protection also extends to state agencies and agents, Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), which are considered "arm[s] of the State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).

In this case, Al-Habashy does not dispute that the DJJ is a state agency. Nor does she assert that the Commonwealth's Eleventh Amendment immunity has been abrogated by the ADEA or waived by the DJJ. Indeed, Al-Habashy acknowledged in a previous brief that the "DJJ is immune from suit for money damages under the Age Discrimination in Employment Act, pursuant to Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000)." Pl.'s Br. in Opp'n to DJJ's Mot. to Dismiss 3, Docket No. 20. In Kimel, the United States Supreme Court held that "the ADEA [was] not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment[,]" and, thus, that its "purported abrogation of the States' sovereign immunity . . . [was] invalid." Kimel, 528 U.S. at 91. Accordingly, "the States' sovereign immunity in the area of age discrimination remains intact." Skalafuris v. City of New York, 444 F. App'x 466, 468 (2d Cir. 2011).

In addition to monetary damages, Al-Habashy's prayer for relief includes a general request for "prospective injunctive relief." 2d Am. Compl. 24. Claims for injunctive relief against state officials are not necessarily barred by the Eleventh Amendment. In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity, which

"permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law on the rationale that such suit is not a suit against the state for purposes of the Eleventh Amendment." McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010). To invoke the exception, however, the plaintiff must bring suit against the proper state officials and not against the state agency itself. As the Supreme Court made clear in Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993), the Ex parte Young exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Id. at 146.

In this case, the mere fact that Al-Habashy seeks prospective, injunctive relief does not preclude the application of the Eleventh Amendment. As previously stated, Al-Habashy's ADEA claim is asserted only against the DJJ, a state agency. Accordingly, the Ex parte Young exception to Eleventh Amendment immunity does not apply. Because the Eleventh Amendment bars the court from considering Al Habashy's ADEA claim as it is currently alleged, Count III will be dismissed without prejudice. See Shahin v. Delaware, 563 F. App'x 196, 198 (3d Cir. 2014) (holding that the plaintiff's ADEA claim was barred by the Eleventh Amendment where the plaintiff "filed suit against the State of Delaware and [a state agency] and did not name any state officials"); see also Hartman v. Univ. of Md. at Baltimore, No. ELH-10-2041, 2013 U.S. Dist. LEXIS 179454, at *16-17 (D. Md. Dec. 20, 2013) (holding that the Ex parte Young exception did not apply to the plaintiff's ADEA claim against a state university, and that the claim was barred by the Eleventh Amendment).

**C. Religiously Hostile Work Environment**

In Count IV of the second amended complaint, Al-Habashy alleges that DJJ employees "harassed [her] on account [of her] religion," creating a hostile work environment in violation of

Title VII. 2d Am. Compl. ¶ 115. "To state a hostile work environment claim, [the plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her [religion]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Having carefully reviewed Al-Habashy's second amended complaint and the arguments contained in her brief in opposition, the court is constrained to conclude that this claim is subject to dismissal. In her brief in opposition, Al-Habashy quotes from the following paragraph of the second amended complaint, which she maintains is sufficient to state a viable hostile work environment claim:

> Immediately [upon becoming her supervisor] Doyle began to harass . . . Plaintiff by, among other behaviors, refusing training opportunities for Plaintiff afforded to other similarly situated employees, hindering Plaintiff from obtaining reimbursement for expenses incurred in her employment, being overly and disparately critical of her job performance, disciplining her for actions that other similarly situated persons who were not Muslim . . . were not disciplined, refusing to personally interact with Plaintiff, and ignoring Plaintiff in public areas of the office.

2d Am. Compl. ¶ 67. The court agrees with the DJJ that these facts do not describe the type of severe or pervasive religious-based harassment necessary to state a hostile work environment claim. See Buchanan v. ICF Int'l, Inc., 545 F. App'x 217, 219 (4th Cir. 2013) (holding that the conduct described in the complaint fell short of being severe or pervasive enough to establish an abusive environment, where the plaintiff alleged that her supervisor, over the course of nine months, yelled at her at meetings, made "snide comments" to her, "play[ed] favorites with employees and pitt[ed] employees against each other," and "unfairly scrutinize[ed] and criticized" the plaintiff's use of leave and her compliance with the supervisor's directives); see also Bass, 324 F.3d at 765 (emphasizing that while the plaintiff's complaint was "full of problems she

experienced with her coworkers and supervisors," it did not "describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim"). Accordingly, the motion to dismiss will be granted with respect to this portion of Count IV.

### D. Constitutional Claims

In Count VI, Al-Habashy asserts a number of claims against Hubbard and Doyle under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. Specifically, Al-Habashy claims that these defendants deprived her of a protected property interest in violation of the Due Process Clause of the Fourteenth Amendment, and that they retaliated against her for exercising her First Amendment right to free speech.

#### 1. Due Process Claim

With respect to the first claim, Al-Habashy alleges that she had a "constitutionally protected property interest in her employment" as a non-probationary employee of the City of Roanoke. 2d Am. Compl. ¶¶ 20, 133. She further alleges that the City terminated her employment, that Hubbard and Doyle participated in the termination decision, and that they "did not afford [her] due process before taking adverse action against her." Id. ¶ 77-78, 137.

Even assuming that Al-Habashy had a protected property interest in her continued employment with the City, the court concludes that she has failed to adequately plead a procedural due process claim against these defendants. In Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), the United States Supreme Court outlined the due process protections that must be afforded to tenured public employees. The Court held that "all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures." Id. at 547-48. When an employee is afforded adequate

post-termination procedures, the pre-termination hearing "need not be elaborate" or "definitely resolve the propriety of the discharge." Id. at 545. It need only serve as "an initial check against mistaken decisions." Id. Due process is satisfied where the employee receives pre-termination "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." Id. at 546.

In this case, Al-Habashy's second amended complaint is entirely devoid of any specific allegations of procedural deficiencies related to her termination. She "has not alleged any facts suggesting that she was not aware of the conduct for which she was terminated, that she did not have an opportunity to respond prior to her termination," or that she was not afforded access to post-termination administrative procedures. Jehnert v. Franklin, No. JKB-1-1552, 2011 U.S. Dist. LEXIS 9842, at *10 (D. Md. Feb. 1, 2011). In the absence of any factual allegations to support her conclusory assertion that she was denied due process by Hubbard and Doyle, the court concludes that her due process claim against these defendants must be dismissed. See also Glasstetter v. Rehab. Servs. Comm'n, No. 2:07-cv-125, 2008 U.S. Dist. LEXIS 25070, at *29 (S.D. Ohio Mar. 28, 2008) (holding that the plaintiff's vague, conclusory assertion that she was denied due process did not satisfy the pleading requirements for a pre-deprivation procedural due process claim, and emphasizing that there was not a single factual allegation in the complaint regarding the extent to which the plaintiff was provided notice and an opportunity to respond prior to her termination).

**2. First Amendment Claim**

Al-Habashy also asserts a First Amendment retaliation claim against Hubbard and Doyle. Specifically, Al-Habashy alleges that she engaged in protected speech when she complained about employment discrimination, that Hubbard and Doyle "took adverse action against [her] to include

affecting and terminating her employment," and that her protected speech "was a substantial or motivating factor in these defendants' decision to take adverse action against [her]." 2d Am. Compl. ¶¶ 132-35.

**a. Qualified Immunity**

To the extent that Al-Habashy's First Amendment claim is asserted against Hubbard and Doyle in their individual capacities, the DJJ defendants argue that Hubbard and Doyle are entitled to qualified immunity. "Qualified immunity protects government officials from civil damages in a § 1983 action 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "In determining whether a defendant is entitled to qualified immunity, a court need not first determine whether the defendant actually violated the plaintiff's statutory or constitutional rights." Stickley v. Sutherly, 416 F. App'x 268, 271 (4th Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Rather, "the court may first determine whether the right in question was 'clearly established' at the time of the alleged violation, and if it was not, the court need go no further." Id.

In this case, the court finds such analytic flexibility to be particularly appropriate and, thus, will consider only whether Al-Habashy's right to complain about employment discrimination was clearly established at the time of her termination. "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable [official] would have understood, under the circumstances at hand, that his behavior violated the right." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). In other words, "existing precedent must have placed the statutory or

constitutional question" confronted by the official "beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).

Whether a public employee's speech is protected by the First Amendment depends in part upon whether it "may be 'fairly characterized as constituting speech on a matter of public concern.'" Id. (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). Matters of public concern are those of "great social, political, or other interest to a community." Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006). Such matters "do[] not include 'personal complaints and grievances about conditions of employment.'" Durham v. Jones, 737 F.3d 291, 300 (4th Cir. 2013) (quoting Campbell, 483 F.3d at 267); see also Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992) ("Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee."). Whether speech addresses a matter of public concern or expresses a private grievance is determined by its "content, form, and context." Durham, 737 F.3d at 299 (internal citation and quotation marks omitted).

In this case, the plaintiff claims that she was terminated in retaliation for her prior complaints of employment discrimination. The complaints "consisted of internal complaints to DJJ, . . . Charge[s] of Discrimination [filed] with the Equal Employment Opportunity Commission," and lawsuits previously filed in this court. 2d Am. Compl. ¶ 39. In these complaints, the plaintiff asserted "that her failure to progress beyond the initial interview stage [for the supervisory positions with the DJJ] was due to discrimination based upon her age, race, and

religion." Id. ¶ 38; see also id. ¶ 63. The plaintiff also asserted that the DJJ retaliated against her for complaining about discrimination.

While complaints of unlawful discrimination and retaliation can constitute matters of public concern, such complaints are "not always" matters of public concern. Campbell, 483 F.3d at 268 (emphasis in original). Whether such complaints amount to matters of public concern in any given case "depends on the content, form and context of the complaint." Id. at 269. "This is a highly fact-intensive inquiry, which may be influenced by any variety of factors," Stickley, 416 F. App'x at 272, including whether an individual was merely seeking redress for her own personal employment grievances. Compare Brooks v. Arthur, 685 F.3d 367, 372, 374 (4th Cir. 2012) (holding that the plaintiff's EEO complaint, which referred to race and religion, was not on a matter of public concern, where the complaint was "replete with I's and me's" and did not "seek anything other than an improvement of his own situation"); with Campbell v. Galloway, 483 F.3d 258, 269-70 (4th Cir. 2007) (holding that a female police officer's letter complaining of sexual harassment and gender discrimination touched on matters of public concern, where the letter "included complaints about inappropriate conduct directed towards other female [officers]" and "members of the public," and did not merely seek "to resolve [the officer's] own personal problem"); see also Hinks v. Bd. of Educ., No. WDQ-09-1672, 2010 U.S. Dist. LEXIS 129005, at *15 (D. Md. Dec. 7, 2010) (holding that a plaintiff's allegations were insufficient to establish that his speech involved a matter of public concern, where the plaintiff alleged that he complained about discriminatory "mistreatment directed at him personally, and which apparently affected only him") (internal citation and quotation marks omitted); Taylor v. County of Pulaski, No. 7:06CV00467, 2008 U.S. Dist. LEXIS 79228, at *20 (W.D. Va. Oct. 8, 2008) (holding that the plaintiff's EEOC charge and race discrimination lawsuit did not constitute matters of public

concern, since "both overwhelmingly focus[ed] upon the conduct directed against [the plaintiff] and the harm that allegedly resulted to him").

In this case, the record indicates that Al-Habashy's complaints of discrimination and retaliation were personal in nature and generally related to her own situation. As described in her brief in opposition, Al-Habashy spoke out about "unlawful employment practices [that were] visited upon her" and "unlawful employment practices she was suffering." Docket No. 48 at 6-7 (emphasis added). Based on the existing case law, including the decisions cited above, the court concludes that Hubbard and Doyle could have reasonably believed that such personal grievances did not involve matters of public concern and, thus, were not protected by the First Amendment. Because it cannot be said that Hubbard and Doyle violated a "clearly established" constitutional right, they are are entitled to qualified immunity on the plaintiff's claim against them in their individual capacities. See Campbell, 483 F.3d at 271-72 (holding that the defendants were entitled to qualified immunity, where the facts were "close enough to the ill-defined line between private speech and speech involving matters of public concern"); see also Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) (emphasizing that state officials are only subject to liability in their individual capacities for "transgressing bright lines," and "not . . . for bad guesses in gray areas").

**b. Eleventh Amendment Immunity**

Al-Habashy's First Amendment claim under § 1983 is also advanced against Hubbard and Doyle in their official capacities. For the following reasons, the court concludes that this claim is barred by the Eleventh Amendment.

It is well settled that § 1983 does not abrogate Eleventh Amendment immunity. See McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987) (citing Quern v. Jordan, 440 U.S. 332,

341 (1979)). In opposing the instant motion to dismiss, Al-Habashy argues that the allegations in her second amended complaint are sufficient to invoke the Ex parte Young exception discussed above, since her prayer for relief includes a general demand for "prospective injunctive relief." 2d Am. Compl. 24. However, Al-Habashy fails to explain how Doyle or Hubbard, who is deceased, would be capable of providing such relief. As other courts have previously explained, the Ex parte Young exception only authorizes suits against state officials who have the power to provide the injunctive relief requested by the plaintiff. See, e.g., Klein v. Univ. of Kansas Med. Ctr., 975 F. Supp. 1408, 1417 (D. Kan. 1997) (emphasizing that "the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment") (citing Ex parte Young, 209 U.S. at 157); Kimbleton v. White, No. 12-974-GMS, 2014 U.S. Dist. LEXIS 123091, at *14 (D. Del. Sept. 4, 2014) (holding that the Ex parte Young exception did not apply where neither defendant was capable of providing the injunctive relief requested by the plaintiff). Because Al-Habashy has failed to allege any facts sufficient to establish that Hubbard or Doyle could reinstate her to her previous position with the City of Roanoke, or provide any other form of prospective injunctive relief, her claim against Hubbard and Doyle in their official capacities must be dismissed.

**E. Race Discrimination**

In count VII of the second amended complaint, Al-Habashy claims that Hubbard, Doyle, and the DJJ discriminated against her on the basis of her race, in violation of 42 U.S.C. §§ 1981 and 1983. Section 1981(a) provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject

to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Al-Habashy has conceded, in her brief in opposition to the pending motion, that the DJJ is immune from liability under §§ 1981 and 1983, pursuant to the Eleventh Amendment. See Pl.'s Br. in Opp'n to DJJ Defs.' Mot. 3, Docket No. 48. For the reasons stated above, the court likewise concludes that Hubbard and Doyle are immune from liability in their official capacities, and that the allegations in the second amended complaint are not sufficient to invoke the exception articulated in Ex parte Young. Accordingly, Al-Habashy's claim for discrimination under §§ 1981 and 1983 against the DJJ will be dismissed, as will the claim against Hubbard and Doyle in their official capacities.

On the other hand, the DJJ defendants' motion to dismiss will be denied with respect to the claim for discrimination asserted against Hubbard and Doyle in their individual capacities. The court rejects the defendants' argument that such claim is barred by the Supreme Court's decision in Jett v. Dallas Independent School District, 491 U.S. 701 (1989). In Jett, the Supreme Court held that § 1983 provides "the exclusive federal remedy for violation of the rights guaranteed in § 1981" by state actors. Id. at 733. Thus, "when state actors violate a person's rights declared in § 1981, that person [must bring] suit pursuant to § 1983." Smiley v. Ala. Dep't of Transp., 778 F. Supp. 1283, 1297 (M.D. Ala. 2011); see also Mveng-Whitted v. Va. State Univ., 927 F. Supp. 2d 275, 276 (E.D. Va. 2013) (explaining that "a plaintiff must bring suit under § 1983 to enforce her rights under § 1981").

In this case, Al-Habashy has done just that. It is clear from the second amended complaint that her claim of race discrimination in violation of § 1981 is brought "pursuant to . . . § 1983." 2d. Am. Compl. 22. Accordingly, her claim against Hubbard and Doyle in their individual

capacities is not subject to dismissal under Jett. See Bolden v. City of Topeka, 441 F.3d 1129, 1134, 1137 (10th Cir. 2006) (noting that the plaintiff's § 1981 claim would have escaped dismissal if the plaintiff had alleged that he sought relief on the claim under § 1983, and holding that the district court should have permitted the plaintiff to amend his complaint to do so); see also Numa v. Cannizzaro, No. 13-515, 2014 U.S. Dist. LEXIS 43598, at *25 n.4 (E.D. La. Mar. 31, 2014) (rejecting the defendants' argument that the plaintiff's § 1981 claim was not properly premised on § 1983, where the plaintiff specifically alleged that her race discrimination claims were "asserted 'under 42 U.S.C. § 1981 through 42 U.S.C. § 1983'").

**Conclusion**

For the reasons stated, the DJJ defendants' partial motion to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this order and the accompanying memorandum opinion to all counsel of record.

ENTER: This 24th day of September, 2014.

[signature]

Chief United States District Judge